## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

VAN LEONARD                                    CIVIL ACTION

VERSUS                                         NO.  09-6469

N. BURL CAIN, WARDEN                           SECTION "B"(2)


### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  It was recently reassigned to me.  Record Doc. No. 14.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Van Leonard, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Leonard was indicted on August 21, 2002, for the first degree murder of Curtis Lavar Bibbins during the perpetration or attempted perpetration of an armed robbery and/or, alternatively, the distribution, exchange, sale or purchase of a controlled dangerous substance.[3]  The indictment was amended on September 3, 2002, and May 17, 2004, to correct clerical errors.[4]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> On Saturday, March 23, 2002, fishermen discovered the body of twenty-year-old Curtis Bibbins floating in the water under the I-55 northbound overpass near mile marker 10.9.  At approximately 10:30 a.m., officers from the St. John the Baptist Parish Sheriff's Office responded to scene.  Sergeant Michael Davis discovered what appeared to be blood stains in the emergency lane and on the side and top of the guardrail above the victim's body.
>
> The body was removed from the water and brought to shore near the Ruddock Exit.  At 12:30 p.m., the body was examined by a physician from the St. John's Parish Coroner's office.  Based on the victim's stomach contents and the condition of his body, Dr. Christy Montegut, the St. John's Parish Coroner, testified that the victim was shot sometime before midnight on March 23, 2002. However, Dr. Montegut could not pinpoint the actual time the gunshot wound was inflicted. In addition, the projectile was recovered during the autopsy.
>
> Because the victim resided in New Orleans, the New Orleans Police Department assisted Detective St. Martin in contacting the victim's family.  Crystal Keeler, the victim's girlfriend, testified that the victim sold marijuana. Ms. Keeler also testified that she last saw the victim at his residence at approximately 7:00 p.m. on Friday, March 22, 2002.  The victim told her that he was going to Memphis to

---

[2]Rec. Doc. No. 12.

[3]St. Rec. Vol. 1 of 6, Indictment, 8/21/02.

[4]St. Rec. Vol. 1 of 6, Amended Indictment, 9/3/02 (handwritten amendment dated 5/17/04).

buy marijuana and that "Van" was going with him. The victim said that they were going in Van's van. The van contained crates, which they were going to use to transport the drugs. Ms. Keeler saw a shoe box and a box of Saran Wrap on the floor in the victim's residence. Ms. Keeler said the shoe box contained bundles of money and each bundle was held together with a black rubber band in the center of the bundle. The victim told her that the money was packaged in $1,000 increments. Ms. Keeler admitted that she recalled telling Detective St. Martin that the victim told her that the marijuana was going to sell at $400 per pound for a total of $40,000. She did not recall telling Detective St. Martin that the defendant had a supplier for the marijuana. Ms. Keeler said that the victim's car was at his residence and that there was no van at the victim's residence when she was there. Detective St. Martin testified that he learned from Crystal Keeler that the victim was going to the residence of a friend, Rene Shields. Detective St. Martin spoke to Shields, who confirmed that the victim was at Shields' residence at approximately 7:30 p.m.

At 8:45 p.m., the victim telephoned Ms. Keeler from his cell phone. He said that he was in Laplace and that he would call her "tomorrow or whenever." The victim did not mention whether or not he was with Van at the time. In addition, Ms. Keeler testified she had never met Van and that she did not recognize the defendant.

After obtaining statements from the victim's mother and girlfriend, Detective St. Martin contacted Jefferson Parish Sheriff's Detective Clogher to obtain a search warrant for defendant's residence, which was located at 2168 South Glenn Cove in Jefferson Parish. On the evening of March 28, 2002, Detective Clogher executed the warrant in the presence of several St. John Parish officers. The officers discovered a silver box in the master bedroom closet containing $22,850 in cash in bundles. Two of the bundles were packaged in Saran Wrap and each bundle totaled $10,000. Each $1,000 increment within these two bundles was held together with a black rubber band in the center of the bundle. The remainder of the money was in two bundles that were held together with a black rubber band in the center of the bundle. In addition, the police found $2449 in several bundles of cash held together with a black rubber band in the center inside of the defendant's wife's purse. Two of these bundles were also in $1,000 increments. They found $208 in cash in defendant's wallet. The police also found a live nine millimeter round in a dresser drawer of the master bedroom. In addition, the police found a title to a grey Ford van registered to 2DXtreme Transport.

Later that evening, defendant made a statement, which was not recorded, to Detective St. Martin at the Jefferson Parish Detective Bureau. According to Detective St. Martin, defendant said that he dropped the victim off at the victim's residence between 7:00 and 7:30 p.m. before returning home. Defendant denied that he was involved in the victim's death, but he said that he would be willing to die for the crime. Further, defendant said a few times that he was too deep into something, but would not elaborate. However, defendant said that Detective St. Martin could not offer him or his family any kind of protection. Defendant also told Detective St. Martin that he was an independent contractor delivering pharmaceuticals for another

company in his company van. Defendant related that the van was stored in the company's warehouse in Kenner. Defendant provided the keys to the van and gave the officers permission to search it. When asked how much money was at his house, defendant replied that there was about $200. In addition, defendant said that he was the only person who drove the van.  Detective St. Martin and other officers went to the warehouse in the early morning hours of March 29, 2002 and met with Brian Hymel, the terminal manager for Consolidated Delivery and Logistics (CD&L).  Mr. Hymel told police that defendant was an independent contractor who delivered pharmaceutical products to drug stores and hospitals for CD&L.  Mr. Hymel also said that the van was customarily parked in the warehouse. The officers looked around the outside of the van to see if there was any evidence in plain view. When they saw what appeared to be blood on the sliding door of the van, they had the van towed and secured until a search warrant could be obtained. On April 2, 2002, the search warrant was executed.  They found a spent nine millimeter casing under the driver's side seat.  The officers seized the entire passenger's side seat because there appeared to be blood under the seat, seized portions of the rubber stripping from the door frame, and a pair of rubber gloves. Detective St. Martin testified that he found blood in 16 different locations inside the van and that most of the blood was on the sliding door of the van.

The victim was linked to defendant's van through DNA testing. Because the autopsy samples were insufficient to obtain the victim's DNA, samples were collected from the victim's mother. DNA expert Julie Golden testified that she tested 15 unknown samples from the crime scene. Of that number, there were no interpretable results on 9 of the samples. Six of the results were all from the same male individual and were consistent with being a child of Ms. Bibbins. DNA that was consistent with being from a biological child of Ms. Bibbins was found on the rubber stripping of the front passenger's side door, on the cloth of the front passenger's seat and on the gloves from the vehicle. Samples from the rubber stripping from the van's front passenger door and two other blood samples from the van produced a complete DNA profile. Ms. Golden testified that it was 250 times more likely that these DNA samples were from a child of Ms. Bibbins than of a random individual. The blood sample from the road, the black vinyl gloves, and cloth from the front passenger's seat all produced a partial profile, which were still consistent with being from a biological child of Ms. Bibbins, but the statistics were not as strong.  According to Ms. Bibbins, she only had one other child.  Ms. Bibbins testified that neither she or that child had been in an accident on I-55 and that neither of them had ever been inside defendant's van.

According to Patrick Lane, the State's firearms expert, the nine millimeter spent casing from the van and the nine millimeter live round from defendant's residence had both been cycled through the same magazine at some point in time. However, he could not link the projectile recovered from the victim to the live round or to the spent casing found in the van. Mr. Lane testified that the projectile recovered from the victim was composed of fragments. Mr. Lane acknowledged

there was another test, which he could not perform at his facility, that could possibly reveal a link between a projectile and a casing. But, Mr. Lane did not believe that it was feasible to perform this test on the projectile recovered from the victim due to its condition.

Defendant did not testify at trial, but presented an alibi defense through his son, Travis Leonard, who was a United States Marine, and his friend, Darryl Washington. According to Washington, defendant called him at 11:30 a.m. on March 22, 2002 and asked him to meet him at the Winn-Dixie on Louisiana and Claiborne. When defendant entered Washington's vehicle, Washington saw the defendant's van depart from the parking lot. Defendant told Washington that "Baldy" said to tell him hello. Although defendant never affirmatively said so, Washington assumed from these events that defendant had loaned his van to Baldy. Washington brought defendant home, but he saw defendant again later that evening between 6:30 and 6:45 p.m. when defendant came to his residence on Ames Boulevard. Shortly thereafter, they went to eat at Popeye's and played a videogame, John Madden 2004, until 9:00 or 9:15 p.m. According to Washington, they have a videogame tournament at his house with a lot of people every Friday night, but on this particular evening, the game ended early because defendant needed to take Travis somewhere early the following morning. Washington said that Travis and another friend were also at the house. Defendant came over on Sunday morning to play the videogame again. However, he received a phone call from Baldy. After the call was over, defendant asked Washington to bring him to pick up the van at Winn-Dixie. Thereafter, Washington drove defendant's truck and defendant drove the van to the warehouse where he stored the van. Washington said that defendant and another person, Calvin Fletcher, had started the transportation company and that Fletcher also drove the van. Washington said he had driven the van before and that defendant frequently loaned out the van. Travis said that he and his father went to Washington's house between 5:30 and 6:00 p.m. to play John Madden 2004 and that they left between 9:00 and 9:15 p.m. According to Travis, his father was at home at 11:00 p.m. when he went to sleep and he was there when Travis woke up at 6:00 a.m. the next morning.

Neither Washington nor Travis immediately disclosed this alibi information. Washington testified that he told defendant's attorney's assistant approximately one year and a half before the trial and Travis testified that he related this information to his father's attorney three to four months before trial.

(footnotes omitted) <u>State v. Leonard</u>, 910 So.2d 977 (La. App. 5th Cir. 2005); State Record Volume 4 of 6, Louisiana Fifth Circuit Court of Appeal Opinion, 2005-KA-42, pp. 3-8, July 26, 2005.

Leonard was tried before a jury on June 22-24, 2004, and was found guilty as charged.[5]  At a hearing held on August 4, 2004, the state trial court denied Leonard's motion for new trial.[6]  Because the State did not pursue the death penalty, the state trial court sentenced Leonard to serve life in prison without benefit of parole, probation or suspension of sentence.[7]

On direct appeal, Leonard's counsel raised two assignments of error:[8] (1) The evidence was not sufficient to support the verdict in that the State failed to prove that he was the perpetrator. (2) The state trial court erred in admitting the hearsay testimony of Crystal Keeler, which constituted other crimes evidence, and denied Leonard a fair trial. On July 26, 2005, the Louisiana Fifth Circuit Court of Appeal affirmed the conviction, finding that the "other crimes evidence" argument was procedurally barred and the remaining claims were without merit.[9]

---

[5]St. Rec. Vol. 2 of 6, Verdict of the Jury, 6/24/04; St. Rec. Vol. 3 of 6, Trial Transcript, 6/22/04; St. Rec. Suppl. Vol. 1 of 3, Trial Transcript (continued), 6/22/04; Trial Transcript, 6/23/04; Trial Transcript, 6/24/04.

[6]St. Rec. Suppl. Vol. 2 of 3, Sentencing Transcript, p. 9, 8/4/04; St. Rec. Vol. 2 of 6, Motion for New Trial, 8/4/04.

[7]Id., p. 11.

[8]St. Rec. Vol. 4 of 6, Appeal Brief, 05-KA-42, 2/24/05.

[9]State v. Leonard, 910 So.2d at 977; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 05-KA-42, 7/26/05.

Leonard's conviction became final 30 days later, on August 25, 2005, because he did not seek rehearing or file for review in the Louisiana Supreme Court. Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

On July 5, 2006, Leonard submitted a motion seeking to vacate his sentence.[10] He based the motion on the following claims: (1) The indictment was illegal and unconstitutional because it was based on race discrimination in the grand jury selection process. (2) He received ineffective assistance of counsel when his attorney failed to object to the grand jury selection process. (3) La. Code Crim. P. art. 413(B) under which the grand jury was selected was unconstitutional. (4) The indictment failed to charge a crucial element of the alleged offense. (5) Counsel was ineffective for failure to object to the indictment. (6) The conviction was obtained where the state trial court was without jurisdiction. On July 20, 2006, the state trial court refused to consider the motion because it was in an improper form.[11]

On August 22, 2006, Leonard's counsel filed another motion for a new trial based on Keeler's testimony and the trial court's alleged error in requiring the defense to

---

[10]St. Rec. Suppl. Vol. 3 of 3, Motion to Vacate, 7/5/06.

[11]St. Rec. Vol. 5 of 6, Trial Court Order, 7/20/06; see also Trial Court Judgment, 1/12/07 (explaining the order date 7/20/06).

7

provide an alibi.[12]  The state court record does not contain the trial court's ruling on this motion.

That same day, August 22, 2006, Leonard submitted an untimely[13] writ application to the Louisiana Supreme Court seeking review of his direct appeal.[14]   The court eventually denied the application on June 1, 2007, without stated reasons.[15]

In the meantime, on August 7, 2006, Leonard also submitted an application for post-conviction relief on the proper form to the state trial court, arguing ineffective assistance of counsel for failure to challenge at trial Keeler's testimony as inadmissible other crimes evidence.[16]  The state trial court denied the application for post-conviction relief on October 9, 2006, finding no merit to the claim since defense counsel had in fact objected to the statement.[17]   The Louisiana Fifth Circuit later denied Leonard's writ

---

[12]St. Rec. Vol. 5 of 6, Motion for New Trial, 8/22/06.

[13]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[14]St. Rec. Vol. 4 of 6, La. S. Ct. Letter, 2006-KH-2241, 9/12/06 (showing postal meter stamp of 8/22/06).

[15]State ex rel. Leonard v. State, 957 So.2d 165 (La. 2007); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2006-KH-2241, 6/1/07.

[16]St. Rec. Vol. 5 of 6, Application for Post-Conviction Relief, 8/22/06 (dated 8/7/06).

[17]St. Rec. Vol. 5 of 6, Trial Court Judgment, 10/9/06.

application on November 28, 2006, finding no error in the trial court's ruling.[18]   The Louisiana Supreme Court also denied Leonard's related writ application without stated reasons on October 5, 2007.[19]

In the meantime, on December 22, 2006, Leonard submitted another motion to vacate his conviction and sentence, raising the same arguments as those in the prior motion to vacate.[20]   The state trial court denied the motion on January 12, 2007, as repetitive.[21]

Leonard filed another application for post-conviction relief on October 29, 2007, alleging that the trial court erred in denying the defense request for mistrial and that he received ineffective assistance of counsel.[22]   The state trial court denied relief, finding the application to be repetitive on November 2, 2007.[23]  On November 14, 2007, Leonard

_____

[18]St. Rec. Vol. 5 of 6, 5th Cir. Order, 06-KH-881, 11/28/06.

[19]State ex rel. Leonard v. State, 964 So.2d 382 (La. 2007); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2006-KH-3041, 10/5/07; La. S. Ct. Letter, 2006-KH-3041, 12/29/06 (postal meter 12/11/06).

[20]St. Rec. Vol. 5 of 6, Motion to Vacate an Illegal Sentence, 1/9/07 (dated 12/22/06).

[21]St. Rec. Vol. 5 of 6, Trial Court Judgment, 1/12/07.

[22]St. Rec. Vol. 5 of 6, Application for Post-Conviction Relief, 10/29/07.

[23]St. Rec. Vol. 5 of 6, Trial Court Judgment, 11/2/07.

wrote a letter to the state trial court providing reasons why the application should not be considered repetitive.[24]

On review, the Louisiana Fifth Circuit denied relief on February 11, 2008, finding no error in the trial court's denial of the petition as repetitive and alternatively noting that Leonard's claims were meritless.[25]   The Louisiana Supreme Court also denied relief without stated reasons on August 12, 2009.[26]

## II.   FEDERAL HABEAS PETITION

On March 5, 2010, the clerk of this court filed Leonard's petition for federal habeas corpus relief in which he asserted seven grounds for relief:[27] (1) The evidence was insufficient to support the verdict because the State failed to prove that he was the perpetrator. (2) The state trial court erred in admitting the hearsay testimony of Crystal Keeler, which constituted other crimes evidence, and denied Leonard a fair trial. (3) The state court erred in denying petitioner's claims of ineffective assistance of counsel where counsel failed properly to object at trial to Keeler's testimony as other crimes evidence and not just hearsay to preserve the argument for appeal. (4) The state trial judge should

---

[24]St. Rec. Suppl. Vol. 2 of 3, Letter to the Court, 11/19/07 (dated 11/14/07).

[25]St. Rec. Vol. 5 of 6, 5th Cir. Order, 07-KH-1029, 2/11/08.

[26]State ex rel. Leonard v. State, 17 So.3d 373 (La. 2009); St. Rec. Suppl. Vol. 2 of 3, La. S. Ct. Order, 2008-KH-0709, 8/12/09; St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2008-KH-709, 4/1/08 (postal metered 3/10/08).

[27]Rec. Doc. No. 12.

have recused herself from review of the second application for post-conviction relief. (5) The state trial court erred in denying the second post-conviction application as repetitive. (6) The state trial court abused its discretion in interpreting Leonard's reasons for failing to bring his claims in his first application for post-conviction relief. (7) The state trial court abused its discretion in finding that the ineffective assistance of counsel claim was not a new claim.

The State filed an answer and memorandum in opposition to Leonard's petition arguing that the claims should be dismissed for the same reasons relied upon by the Louisiana Fifth Circuit, that they were without merit and failed to raise a federal issue.[28]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[29] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[28]Rec. Doc. Nos. 9, 11.

[29]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Leonard's petition, which, for reasons discussed below, is deemed filed in this federal court on September 17, 2009.[30]

The threshold questions in habeas review under the AEDPA are whether the petition is timely filed and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State concedes, and I find, that the federal petition was timely filed.  Leonard's claims also are exhausted.  In its adoption of the Louisiana Fifth Circuit's appellate opinion as to the admissibility of Keeler's testimony, the State is apparently asserting that the "other crimes evidence" argument is in procedural default. I will address that issue first.

---

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Leonard's petition was filed by the clerk of this court on March 5, 2010, when the filing fee was paid.  Leonard's signature on the petition is dated September 17, 2009.  This is the earliest date on which he could have delivered the set of pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.   PROCEDURAL DEFAULT

On direct appeal, Leonard's counsel argued that Keeler's testimony was inadmissible hearsay, that it constituted other crimes evidence and the admission of her testimony rendered his trial unfair.  The Louisiana Fifth Circuit noted that Leonard did not make the assertion at trial that her testimony was inadmissible other crimes evidence. As a result, the state appellate court found that he was precluded from raising the issue for the first time on appeal, and the court declined to address the issue.  State v. Leonard, 910 So.2d at 985-86.   This was the last reasoned decision on the issue.   Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the federal claim and adequate to support that judgment. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly

and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902. In this case, the last reasoned decision of the Louisiana Fifth Circuit barred review of Leonard's claim that Keeler's testimony was inadmissible other crimes evidence, finding that this was not a stated basis for objection to the testimony at trial.

A.    <u>INDEPENDENT AND ADEQUATE</u>

For the foregoing state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." <u>Fisher v. Texas</u>, 169 F.3d 295, 300 (5th Cir. 1999). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Glover</u>, 128 F.3d at 902.

The Louisiana Fifth Circuit's ruling indicated that Leonard failed to preserve his other crimes evidence argument because it was not part of the objection to Keeler's testimony made at or before trial. The principal Louisiana statutory provision requiring

this type of contemporaneous objection is La. Code Crim. P. art. 841(A), which provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Tasco v. Butler, 835 F.2d 1120, 1124 (5th Cir. 1988). It is well-settled that Louisiana's contemporaneous objection rule is an independent and adequate state procedural ground, regularly applied by the Louisiana courts. Duncan v. Cain, 278 F.3d 537, 541 (5th Cir. 2002) (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977)); Marshall v. Cain, 2006 WL 2414073 (E.D. La. Aug.18, 2006) (Zainey, J.). When the state court relies on this procedural default in dismissing a claim, as it did here, the claim is barred from federal habeas review. Duncan, 278 F.3d at 541; Riles v. McCotter, 799 F.2d 947, 953 (5th Cir. 1986).

Because the state courts' decisions on this claim rested on an independent and adequate state rule of procedural default, this court may not review Leonard's claim that Keeler's testimony was inadmissible other crimes evidence.

B.   CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32);

15

Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id. at 486.  In a separate claim, Leonard alleges that counsel was ineffective because he failed to raise the other crimes argument at the appropriate time.  Leonard's ineffective assistance of counsel claim is fully addressed later in this opinion, and my conclusion is that he has failed to state constitutionally ineffective assistance on this ground.

Leonard has not offered any other cause for his default on either claim that would excuse the procedural bar imposed by the state courts.  My review of the record does not support a finding that any factor external to the defense prevented him from raising these claims in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d

466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n. 43).  Having failed to show an

objective cause for his default, this court need not determine whether prejudice existed,

and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th

Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Leonard's other crimes evidence argument is therefore procedurally barred from

review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008

(5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual

prejudice and cause of failure to comply with state procedural rule concerning time

restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S.

87 (1998).[31]

C.     FUNDAMENTAL MISCARRIAGE OF JUSTICE

Leonard may avoid this procedural bar only if a fundamental miscarriage of justice

will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing

Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage

of justice, petitioner must provide this court with evidence that would support a

"colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454

(1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual

innocence standard, petitioner must establish a fair probability that, considering all of the

---

[31]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not
required to raise the procedural default argument sua sponte.  Id.

17

evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex.1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Leonard does not present any evidence and the record contains nothing that suggests his actual innocence on the underlying conviction.  He fails to present any evidence or persuasive argument of actual innocence that was not already presented to and resolved by the jury at trial and the state courts on subsequent review.  His claims of actual innocence appear based on the same testimony considered by the jury at trial and the state courts on subsequent review, neither of which is sufficient to overcome the procedural bar.  On the contrary, as discussed below, the evidence was more than sufficient to support his conviction.

For these reasons, Leonard has failed to overcome the procedural bar to his other crimes evidence argument.  This claim is procedurally barred and must be dismissed with

prejudice for that reason. As discussed below, the remainder of his claims must be dismissed on their merits.

V.     STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000);  <u>Penry</u>, 532 U.S. at 792-93;

<u>Hill</u>, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert.

denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25);

<u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

VI.   <u>SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 1)</u>

Leonard argues that the State failed to produce evidence sufficient to link him to the scene of the murder.  Leonard's counsel raised this claim on direct appeal.  The Louisiana Fifth Circuit, relying on <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), and related state law, found that the evidence presented by the State was sufficient to link the victim to Leonard's van and Leonard to the murder.  The court also determined that it was within the jury's province to reject the alibi defense presented by Leonard.  The Louisiana Supreme Court subsequently denied relief on this claim without stated reasons.

Under <u>Jackson</u>, cited by the Louisiana Fifth Circuit, the court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  <u>Id</u>., 443 U.S. at 319; <u>Perez v. Cain</u>, 529 F.3d 588, 594 (5th Cir. 2008); <u>Williams v. Cain</u>, No. 09-30164, 2011 WL 134951, at *3 (5th Cir. Jan. 14, 2011).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  <u>Perez</u>, 529 F.3d at 594 (citing <u>Jackson</u>, 443 U. S. at 324 n. 16).  The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  <u>See</u> <u>McDaniel v. Brown</u>, __ U.S. __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under

Jackson); Johnson v. Cain, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial.") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  United States v. Young, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993); see also Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).  A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  Alexander, 775 F.2d at 598.  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir.2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  <u>Maes v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

In this case, Leonard does not contend that the State failed to establish the elements of the crime of first degree murder.  Rather, he alleges that there was insufficient evidence to conclude that he was the perpetrator of the crime.  The State is required to prove the identity of the perpetrator in addition to the essential elements of the crime.  <u>State v. Vasquez</u>, 729 So.2d 65, 69 (La. App. 5th Cir. 1999).  Under Louisiana law, where the key issue is identification the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof.  <u>Id</u>.

At trial, the jury heard the testimony of Crystal Keeler, who informed police that the murder victim told her he was going to Memphis with "Van" to buy marijuana.[32]  He showed her approximately $40,000 in cash he planned to use to buy the marijuana for $400 per pound.[33]  The money was in a Nike shoe box.  It was divided into increments and wrapped in black rubber bands.  He also had a box of Saran wrap with him as he packaged the money.  Keeler did not know who Van was or why Van was going with the

_____

[32]St. Rec. Vol. 3 of 6, Trial Transcript, p. 109, 6/22/04.

[33]<u>Id</u>., pp. 110, 114.

victim.[34]  She recalled that the victim told her that Van's van had crates in it that he could use to hide the drugs.[35]

While executing a warrant, the police recovered from Leonard's home large sums of money, packaged the same way in black rubber bands and wrapped in Saran wrap.[36] The officers also recovered a live 9mm slug at his home similar to the spent 9mm casing found at the crime scene on I-55 and the same caliber as the bullet that killed the victim.[37] The police also found blood evidence at the murder scene and both on and in Leonard's van which tested as a match for the victim, using DNA samples obtained from his mother.[38]

During questioning by the police, Leonard denied involvement in the murder.  He admitted that the victim had been in his company van on the evening of the murder until around 7:30 p.m.[39]  He told police that he dropped the victim at a residence in New Orleans and then drove home.

---

[34]Id., pp. 110, 111, 112-13, 114, 125.

[35]Id., pp. 114-15.

[36]Id., pp. 182, 186.

[37]Id., pp. 183; St. Rec. Suppl. Vol. 1 of 3, Trial Transcript, p. 54, 6/23/04.

[38]Id., p. 218; St. Rec. Vol. 1 of 3, Trial Transcript, pp. 85-88, 6/23/04.

[39]St. Rec. Suppl. Vol. 1 of 3, Trial Transcript (continued), pp. 213, 214, 6/22/04.

The evidence before the jury established that Leonard and the victim were together in Leonard's van on the night he disappeared.  Leonard was the only regular driver of his company van.  The victim had indicated to a witness that he was going to ride with "Van" to Memphis that evening.  The victim's blood was on and in Leonard's van, along with a 9mm casing, the same caliber bullet used to kill him.

The evidence before the jury was therefore sufficient to place Leonard at the scene of the murder.  The evidence provided and established a clear link between Leonard and the caliber of weapon used in the murder and the money known to have been in the victim's possession.  The evidence was sufficient for the jury to find that Leonard committed the murder. The fact that the jury chose to disregard the alleged alibi testimony was fully within its discretion as factfinder. The alibi testimony was inconsistent with the information Leonard had himself given to police and apparently was not persuasive to the jury.

For these reasons, Leonard has not shown that the state trial courts' denial of relief was contrary to, or an unreasonable application of, Jackson.  He is not entitled to relief on this claim.

VII.   ADMISSIBILITY OF KEELER'S TESTIMONY (CLAIM NO. 2)

Leonard alleges that he was denied a fair trial because Keeler's testimony about the victim's statements to her was inadmissible hearsay and amounted to other crimes

evidence, all of which violated his confrontation rights.  As discussed above, the latter argument concerning other crimes evidence is procedurally barred from review.  I will therefore consider only the hearsay issue.

Leonard's counsel raised this issue on direct appeal.  The Louisiana Fifth Circuit denied relief, finding that the statement met the recognized "state of mind" exception to the Louisiana hearsay rule and that it was not in violation of the Confrontation Clause.  This was the last reasoned opinion on the issue.

Habeas corpus review is, of course, limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir.1992); see Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  States are free to implement procedures regarding the admissibility of evidence, provided that those procedures do not infringe on a constitutional guarantee.  Burgett v. Texas, 389 U.S. 109 (1967).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  Lisenba v. People of the St. of Cal., 314 U.S. 219, 236-37 (1941); Swarthout, 131 S. Ct. at 861-62; Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper

only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

To whatever extent, therefore, that Leonard argues that Keeler's testimony was inadmissible under state law, this court will not review such a claim.  Instead, the court will consider Leonard's federal constitutional claim that admission of this evidence violated his due process rights.  Due process considerations require this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  Swarthout, 131 S. Ct. at 861 (citing Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).  To assess whether there has been a due process deprivation, the court must consider whether Louisiana's law provided Leonard with a protected interest in having Keeler's testimony precluded from his trial.  In this case, it did not, because Keeler's testimony was not hearsay and did not violate the Confrontation Clause.

Under Louisiana law, "[h]earsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."  La. Code Evid. art. 801(c).  Article 803(3) provides in relevant part as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . .
> (3)    Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or

27

physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action . . .

Louisiana law recognizes that conduct or declarations of a murder victim made shortly before the killing may sometimes be admissible as tending to show the immediately preceding circumstances explanatory of the killing and connecting a defendant with it.  State v. Leonard, 910 So.2d 977, 987 (La. App. 5th Cir. 2005); State v. Parks, 2 So.3d 470 (La. App. 5th Cir. 2008).

The record establishes that, contrary to Leonard's argument, the defense was on notice of and had been provided with Keeler's statement in preparation for trial.[40]  It also had been the subject of pretrial motions.[41]

As for the nature of the statement, the information contained in Keeler's statement and trial testimony provided an outline of the victim's plans for the night he was murdered.  He advised her of his intent to drive to Memphis with "Van" so he could purchase marijuana.  There was no discussion of any fear that he would be killed, nor was her testimony used for the purpose of proving Leonard's motive, which might have made it inadmissible as prejudicial.  State v. Parks, 2 So.3d at 477.

---

[40]St. Rec. Suppl. Vol. 1 of 3, Trial Transcript (continued), p. 221, 6/22/04; see also, St. Rec. Vol. 3 of 6, Motion Hearing Transcript (continued), p. 80, 4/7/04.

[41]St. Rec. Vol. 2 of 6, Motion to Suppress Evidence and Motion in Limine, 6/16/04; St. Rec. Vol. 3 of 6, Trial Transcript, pp. 19-20, 96-107, 6/22/04.

Leonard has not shown an error in the judgment of the trial court in admitting the evidence.  As such, he has failed to establish that the admission of the evidence violated his due process rights or otherwise undermined the fundamental fairness of his trial.

Testimony that is admissible under a hearsay exception may nevertheless violate the Confrontation Clause under certain circumstances.  Crawford v. Washington, 541 U.S. 36, 68 (2004).  The Confrontation Clause prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."  Id., at 53-54. Testimonial statements include "ex parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."  Id. at 51.  In contrast, "an off-hand, overheard remark . . . bears little resemblance to the . . . abuses the Confrontation Clause targeted" and is therefore not testimonial.  Id.

The victim's statements as relayed by Keeler in her statement and testimony were made during a during a purely private conversation about the victim's planned activities, without any anticipation or possible reference to his impending murder. The conversation occurred under circumstances that would not lead an objective person reasonably to believe that the statement would be available for use at a later trial.  See Crawford, 541

U.S. at 51; McKinney v. Bruce, 125 Fed. Appx. 947, 950 (10th Cir. 2005) (victim's statements made to his uncle in the uncle's home before his death were not testimonial). The statements were not testimonial under Crawford.  The state trial court did not violate Leonard's rights under the Confrontation Clause in admitting Keeler's testimony.

Leonard has not established that the state courts' denial of relief on this issue was contrary to or an unreasonable application of Supreme Court law.  Leonard is not entitled to relief on this claim.

## VIII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 3)

Leonard alleges that the state trial court erred in denying his ineffective assistance of counsel claim where counsel was allegedly ineffective for failure properly to object to Keeler's statement as both hearsay and other crimes evidence.  He argues that counsel's failure to do so at trial did not preserve the argument for review on appeal.

Leonard's counsel filed a motion for new trial in which he argued, among other things, that Keeler's testimony was impermissible other crimes evidence that implied his involvement in drug activity.[42]  At a hearing on the motion, the state trial court denied the motion, finding that Keeler's testimony addressed an integral part of the charged first degree murder and was not impermissible.[43]

---

[42]St. Rec. Vol. 5 of 6, Motion for New Trial, 8/22/06.

[43]St. Rec. Suppl. Vol. 2 of 3, Sentencing Transcript, pp. 8-9, 8/4/04.

Leonard later raised this ineffective assistance of counsel claim on post-conviction review.  The state trial court denied relief, finding that counsel had objected to Keeler's statement and testimony, and his tactical decision to object at trial on hearsay grounds was within the range of reasonable professional judgment.  The Louisiana Fifth Circuit and the Louisiana Supreme Court also denied relief without stated reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

31

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689). This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that

trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591.   The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  Id.

Leonard argues that his counsel performed deficiently when he failed to challenge Keeler's testimony as inadmissible evidence of other crimes or prior bad acts under La. Code Evid. art. 404(B), in addition to his hearsay objection.  Under a broad reading, he contends that the testimony prejudiced him before the jury by implicating him in illegal drug activity.  This court must consider whether counsel's performance in failing to argue at trial that Keeler's statement and testimony was inadmissible other crimes evidence was constitutionally deficient.

In State v. Prieur, 277 So.2d 126 (La. 1973), the Louisiana Supreme Court held that evidence of other acts of misconduct is generally not admissible to show the defendant's bad character, but that such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding.  See also, La. Code Evid. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La.1993).  Under Louisiana law, to constitute impermissible other crimes or prior bad acts evidence, the evidence must

34

unambiguously implicate the defendant in another crime.  State v. Edwards, 406 So.2d 1331, 1349 (La. 1981); State v. Holmes, 841 So.2d 80 (La. App. 4th Cir. 2003).

In this case, Keeler testified at trial that the victim told her he was going to Memphis to buy drugs and that he was to ride there with "Van."  In her trial testimony, Keeler denied that the victim told her that Van had a supplier/connection for the drugs in Memphis.  The state trial court confirmed that she had made no such comment in the taped statement.  In fact, Keeler testified at trial that she did not know who "Van" was or why he was going with the victim.

The jury did not hear any testimony from Keeler that "Van" was involved in drug activity with the victim. The jury was informed that the victim was going to buy drugs. Keeler's testimony was that the victim was riding with "Van" and she did not know why "Van" was going.  The testimony established plan, identity and opportunity, matters not excluded as evidence.  Her testimony was not an impermissible or unambiguous statement that Leonard was engaged in illegal drug transaction activity.

Thus, Keeler's testimony did not fit the definition of prohibited other crimes evidence under Louisiana law.  Her testimony was not introduced to impugn Leonard's character or depict him as a bad man.  Instead, the testimony was presented to establish an integral part of the sequence of events which led to the murder and the subsequent identification of Leonard as the perpetrator.  See Robinson v. Whitley, 2 F.3d 562,

566-67 (5th Cir. 1993) (evidence was admissible under Louisiana law where it had independent relevance as an integral part of the crime or the sequence of events) (citing State v. Edwards, 406 So.2d at 1350-51 and State v. Guillory, 201 La. 52, 9 So.2d 450 (La. 1942)).

Thus, Leonard has not demonstrated that Keeler's statement or testimony constituted prohibited evidence of other crimes or prior bad acts.  This is similar to and part of the reasons why the state trial court denied counsel's similar argument in the motion for a new trial.  As such, Leonard has not established that counsel had reason to challenge the evidence on that basis.  Counsel does not act unreasonably in failing to urge a meritless objection during trial.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Leonard's claim is without merit.

IX.     STATE TRIAL COURT'S ABUSE OF DISCRETION AND ERRORS IN POST-CONVICTION REVIEW (CLAIM NO. 4, 5, 6 AND 7)

In his next four claims, Leonard argues that the state trial court erred in barring review of his subsequent post-conviction applications raising different grounds of ineffective assistance of counsel.  He also claims that the state trial judge should have

recused herself from addressing his second post-conviction application, because he argued that the judge had abused her discretion in admitting certain evidence at trial.

Although the State concedes exhaustion, the record is unclear as to when Leonard raised these claims.  The State failed to produce to this court the contents of all of the state appellate and Louisiana Supreme Court post-conviction writ applications. Nevertheless, the record is sufficient for this court to rule, and because the claim is without merit, the court need not address exhaustion further.[44]

To the extent Leonard argues here that the state trial court abused its discretion under state law standards of judicial recusal or in applying state procedural rules to his post-conviction applications, this alleged violation of state law does not merit federal habeas corpus relief.  See Swarthout, 131 S. Ct. at 861; see also, Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984).  As discussed above, a federal habeas corpus court will not grant relief unless errors in a state court proceeding resulted in the "denial of fundamental fairness" under the Due Process Clause.  Neal v. Cain, 141 F.3d 207, 214 (5th Cir.1998) (citing Porter v. Estelle, 709 F.2d 944, 957 (5th Cir.1983)).

Most questions concerning a judge's qualifications to hear a case are not constitutional ones.  Buntion v. Quarterman, 524 F.3d 664, 672 (5th Cir. 2008).

---

[44]28 U.S.C. § 2254(b)(2).

However, "the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904-05 (1997); Buntion, 524 F.3d at 672; see Samuel v. Warden, Avoyelles Correctional Center, 51 Fed. Appx. 483 (5th Cir. 2002). Two presumptions weigh in favor of finding that a judicial officer properly discharged his or her duties fairly and impartially: "(1) the presumption of honesty and integrity of the adjudicators; and (2) the presumption that those making decisions affecting the public are doing so in the public interest." Bigby v. Dretke, 402 F.3d 551, 560 (5th Cir. 2005) (citing Bracy, 520 U.S. at 909).

Presumptive bias has been found in three situations: (1) the decision-maker has a direct or pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision-maker has the dual role of investigating and adjudicating disputes and complaints. Bigby, 402 F.3d at 560. To secure federal habeas relief on this basis, the petitioner must "establish that a genuine question exists concerning [the judge's] impartiality." Id., at 559 (citing Liteky v. United States, 510 U.S. 540, 552 (1994)). An appearance of impropriety rising to the level of a fundamental defect resulting in a complete miscarriage of justice must be shown; absent that level of severity, habeas relief is not cognizable. United States v. Couch, 896 F.2d 78, 81 (5th Cir. 1990).

In this case, Leonard has made no such showing. He has not alleged any particular bias or unsupported action or ruling by the state trial court in his post-conviction proceedings. He has not shown that the judge acted with personal interest or bias in denying his application on procedural grounds.

As noted above, Leonard's challenge to the state trial court's denial of his second application on procedural grounds does not raise a reviewable federal habeas claim. See Swarthout, 131 S. Ct. at 861. A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). In addition, on habeas review, federal courts do not "second-guess" a state court's application of its own procedural rules barring review of post-conviction claims where the application is supported by the record. United States ex rel. Bradley v. Clark, No. 99-C-1785, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).

Leonard also has shown no error in the trial court's ruling. He recognizes that he had a prior state application for post-conviction relief, which was addressed by the state trial court on the merits of his ineffective assistance of counsel claim. Louisiana law provides for the dismissal of a successive post-conviction application that fails to raise a new or different claim or that raises a new or different claim that was inexcusably omitted from a prior application. La. Code Crim. P. art. 930.4(D), (E). The record

therefore supported the state trial court's imposition of this bar to his second application. Leonard still has not presented a federal claim for this court to review.  For the foregoing reasons, Leonard is not entitled to federal habeas relief on this claim.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Van Leonard for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[45]

New Orleans, Louisiana, this ____3rd____ day of May, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[45]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.